UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEDRA STRICKLAND, | CASE NO. C18-1073JLR |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| STATE OF WASHINGTON SEATTLE CENTRAL COLLEGE, et al., | |
| Defendants. | |

## I.    INTRODUCTION

Before the court is Defendant State of Washington Seattle Central College's

("Seattle Central" or "the College") motion for summary judgment.  (MSJ (Dkt. # 35).)

Initially, the motion applied to all Defendants[1] and all of Plaintiff Dedra Strickland's

---

[1] In addition to Seattle Central, Ms. Strickland initially sued Defendants Susan Engel, John Doe Engel, Yoshiko Harden, Brian Kenney, Sheila Edwards Lange, John Doe Lange, Brigid McDevitt, John Doe McDevitt, Christina Nelson, John Doe Nelson, Jessica Norouzi,

claims. (*See id.*) However, on December 9, 2019, the court entered a stipulated order

dismissing Individual Defendants, as well as Ms. Strickland's 42 U.S.C. § 1983 claims.

(Stip. Order (Dkt. # 41).) The December 9, 2019, order rendered certain portions of

Seattle Central's summary judgment motion moot.[2] Accordingly, the court addresses

only those portions of the motion that pertain to Ms. Strickland's remaining claims

against Seattle Central.[3] The court has considered Seattle Central's motion, the parties'

submissions in support of and in opposition to the motion, the applicable law, and the

relevant portions of the record. Being fully advised, the court GRANTS Seattle Central's

motion and enters summary judgment in its favor on all of Ms. Strickland's remaining

claims.[4]

## II. BACKGROUND

Ms. Strickland is an African-American woman with Native American roots.

(Strickland Decl. (Dkt. # 37) ¶ 28.) Seattle Central hired Ms. Strickland in April 2008.

(Foster-Brown Decl. (Dkt. # 35-2) ¶ 3, Ex. 2 ("Strickland Dep.") at 26:9-13, 26:25-27:9.)

---

David Skogerboe, Jane Doe Skogerboe, David Blake, John Does 1-10, and Jane Does 10 (collectively, "Individual Defendants"). (*See* Compl. (Dkt. # 1) ¶¶ 1.3-1.13.)

[2] (*See* MSJ §§ V.A (arguing Defendants are immune from suit under 42 U.S.C. § 1983), V.B (arguing Individual Defendants are not liable for damages), V.E (arguing Individual Defendants are entitled to qualified immunity).)

[3] (*See id.* §§ V.C (arguing that Seattle Central is entitled to summary judgment on Ms. Strickland's claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*), V.D (arguing that Seattle Central is entitled to summary judgment on Ms. Strickland's retaliation claim).)

[4] No party requests oral argument (*see* MSJ at 1: Resp. (Dkt. # 36) at 1), and the court concludes that oral argument is not necessary for its disposition of the motion, *see* Local Rule W.D. Wash. LCR 7(b)(4).

Ms. Strickland worked in the College's Career Services Center as a Program Coordinator until she resigned in February 2018. (Compl. (Dkt. # 1) ¶ 5.1; Strickland Decl. ¶ 60 ("I did not resign until February 2018.").) David Skogerboe, as the Career Services Supervisor, supervised Ms. Strickland in her role as a Program Coordinator. (Foster-Brown Decl. ¶ 4, Ex. 3 (attaching the College's organizational chart).)

In 2016, Mr. Skogerboe resigned from his position as Career Services Supervisor. (*See* Strickland Decl. ¶ 18.) During an August 2016, staff meeting, Ms. Strickland asked Brigid McDevitt, Dean of Student Resources, and Mr. Skogerboe if she could be appointed the interim Career Services Supervisor while the College conducted a search for Mr. Skogerboe's replacement. (*See id.* ¶¶ 18-20; *see also* Strickland Dep. at 82:6-12; 84:17-85:16.) Ms. McDevitt responded that the College had never appointed an interim Career Services Supervisor and she doubted that it would do so now, but she advised Ms. Strickland that Ms. Strickland could apply for the permanent position when it was posted. (*See* Strickland Decl. ¶¶ 19-21; Strickland Dep. at 85:7-16; 86:1-3.) Ms. Strickland, however, recalls that Kristen Davey had said that she had previously served as interim Career Services Supervisor. (Strickland Decl. ¶ 20.) Further, because the staff meeting was held in an open area of the Career Services Center, Ms. Strickland felt "humiliated" when she was told she would not be appointed as interim Career Services Supervisor. (*Id.* ¶ 26, Exs. E, F.) Accordingly, Ms. Strickland filed a grievance with her union, which recommended training for Ms. McDevitt and that Ms. McDevitt provide a written apology to Ms. Strickland. (*See id.*) Ms. Strickland attests that despite not being appointed the interim Career Services Supervisor, she nevertheless continued to perform

the job duties of that position.  (*Id.* ¶ 21.)  In late September or early October 2016, Ms. Strickland formally applied for the Career Services Supervisor position.  (*Id.* ¶¶ 22-24.)

Prior to Mr. Skogerboe's departure from Seattle Central, Ms. McDevitt asked him to create a job description for his position and to organize a hiring committee to search for his replacement.  (McDevitt Decl. (Dkt. # 35-5) ¶ 6.)[5]  Ms. Strickland complained to Ms. McDevitt that Mr. Skogerboe should not take part in forming the hiring committee that would interview candidates for his position.  (Strickland Decl. ¶ 42.)   Ultimately, Mr. Skogerboe did not form the hiring committee; instead, Ms. McDevitt formed the committee.  (McDevitt Decl. ¶ 8.)

Ms. McDevitt attests that it is her standard practice to chair a hiring committee for a director or manager within her area, but she decided not to do so for the Career Services Supervisor position because she felt that Ms. Strickland would not believe that she was impartial.  (*Id.* ¶ 9.)  After asking several individuals who declined to serve as chair, Ms. McDevitt asked Jessica Norouzi, who agreed to serve as the chair of the hiring committee.  (*Id.* ¶¶ 10-11.)  Ms. Norouzi informed Ms. McDermitt that she had previously worked with Brian Kenney, who was one of the applicants for the position. (*Id.* ¶ 14.)

There were four panelists on the hiring committee.  (Norouzi Decl. (Dkt. # 35-6) ¶ 3.)  In addition to Ms. Norouzi, who served as the chair, the panel consisted of Kelli

---

[5] Ms. Strickland moves to strike paragraphs 13 and 24 from Ms. McDevitt's declaration on grounds of hearsay and speculation.  (*See* Resp. at 18.)  The court, however, does not rely on these paragraphs in resolving Seattle Central's summary judgment motion, and therefore, denies Ms. Strickland's motion to strike as moot.

Adams, Crystina Mostad, and Claire Makens.  (Chen Decl. (Dkt. # 35-4) ¶ 14, Ex. 1 (attaching Seattle College District HR Investigation Report) at 6.)[6]  The panelists were all women, and one of the panelists identified as a person of color.  (*Id.* ¶ 9.)  The role of the committee was to screen candidates that the committee believed were qualified for the Career services Supervisor position and then recommend candidates to the hiring authority—in this case, Yoshiko Harden, VP of Student Services—who would ultimately make the final hiring decision.  (Norouzi Decl. ¶¶ 4-5.)

Ms. Strickland asserts that Career Services Supervisor position required "a master's degree in Education or Public Administration, knowledge of the Community College System, teaching experience, proficiency in Washington State Occupational Information System (WOIS), Dependable Strengths and Myers Briggs assessment tools." (Strickland Decl. ¶ 24.)  However, as Seattle Central points out, these are merely "preferred qualifications" and not part of the "required education, experience and abilities" listed in job posting, which is attached to Ms. Strickland's declaration.  (*See id.* ¶ 24, Ex. D at 3.)  Indeed, the job posting stated that the position did not require a master's degree but only a "Bachelor's Degree OR any combination of relevant education, training and experience that indicates successful performance of the essential functions of the position."  (*Id.*)

As noted above, a former co-worker of Ms. Norouzi, Brian Kenney, applied for the position.  (*Id.* ¶ 7.)  Ms. Norouzi disclosed her former affiliation with Mr. Kenney to

---

[6] The court cites the page number supplied by its electronic docketing system.

the other panelists on the hiring committee. (*Id.*; Mostad Decl. (Dkt. # 35-3) ¶ 8).) Ms. Norouzi stated her belief that Mr. Kenney met the minimum qualifications for an interview with the committee, but also indicated that the committee as a whole needed to decide whether Mr. Kenney was offered an interview based on the committee's rating rubric. (Norouzi Decl. ¶ 7.) Ultimately, the committee determined that Mr. Kenney met the requirements for the position and should be offered an interview. (*Id.*) Mr. Kenney is Caucasian and, at the time of the interview, was 37 years old. (Strickland Decl. ¶ 28.)

Ms. Norouzi also told the panelists on the hiring committee that she was excited that—with Ms. Strickland's application—they had an internal candidate of color in the applicant pool. (Norouzi Decl. ¶ 8.) The hiring committee did not allot bonus points to internal candidates. (*See* Chen Decl. ¶ 14, Ex. 1 at 7; *see also* Strickland Decl. ¶ 43 ("There was nothing in my scoring to note that I was an internal candidate.").) Nevertheless, Ms. Norouzi stated that she believed the committee needed to prioritize Ms. Strickland as a candidate. (Norouzi Decl. ¶ 8.) Ms. Norouzi explained that she "fundamentally felt that it [was] to the institution's benefit to elevate candidates of color, particularly those who [we]re internal [to the College], if they ha[d] the skills needed to succeed in the roles they [we]re seeking." (Norouzi Decl. ¶ 8.) Although the hiring committee did not unanimously select Ms. Strickland for an interview, the hiring committee did give her extra consideration because she was an internal candidate, and the committee did ultimately extended her an interview. (Chen Decl. ¶ 14, Ex. 1 at 7.) At the time of her interview, Ms. Strickland was 56 years old. (Stickland Decl. ¶ 28.)

For fairness and equity, the hiring committee read the same interview questions to all applicants and provided the same amount of time for each applicant to answer. (Mostad Decl. ¶ 7.)  Ms. Norouzi attests that Ms. Strickland provided responses during her interview "that did not convey her qualifications or enthusiasm for the role." (Norouzi Decl. ¶ 9.)  Ms. Norouzi attests that, despite her encouragement, Ms. Strickland failed to "share experience [sic] that were relevant to the job she was applying for."  (*Id.* ¶ 11.)  Ultimately, the hiring committee concluded that Ms. Strickland was not qualified for the position.  (*See* Mostad Decl. ¶ 5.)  Ms. Strickland disputes Ms. Norouzi's description of her interview.  (*See* Strickland Decl. ¶¶ 32, 34-39.)  Ms. Strickland believes that she did not limit her responses as Ms. Norouzi describes and believes that Ms. Norouzi confused her with someone else.  (*See id.*)

Mr. Kenney was the final candidate interviewed by the hiring committee. (Norouzi Decl. ¶ 16.)  Ms. Norouzi did not actively participate in Mr. Kenney's interview.  (*See id.* ¶ 16 ("I reminded the committee that I knew the candidate, therefore, I would be sitting silent for the interview, and asked them to lead by asking our predetermined questions."); *see also* Mostad Decl. ¶ 8 ("At no time did Jesica Norouzi seek to influence the panelist [sic] in favor or disfavor towards hiring [Mr.] Kenney.").)[7] At the end of the interview process, the hiring committee determined that Mr. Kenney

---

[7] In her declaration, Ms. Strickland states that this portion of Ms. Norouzi's declaration is "simply **not** true."  (Strickland Decl. ¶ 11.)  However, Ms. Strickland bases her statement on Ms. Norouzi's acknowledged participation in other applicant's interviews, and not on any personal knowledge of Ms. Norouzi's conduct during Mr. Kenney's interview.  (*See id.*)  Thus, Ms. Strickland's bare assertion of the falsity of Ms. Norouzi's statement does not create a genuine material factual issue.

was the only candidate that they should recommend to the hiring authority, Ms. Harden. (Norouzi Decl. ¶¶ 17-18; Mostad Decl. ¶ 9 ("Following discussion concerning each candidate for the position, the panel unanimously agreed Brian Kenney was the only qualified individual for the Career Services Supervisor position. Therefore, his was the only applications [sic] moved forward . . . .").) Mr. Kenney out scored all other candidates, and Ms. Strickland's scores were among the lower ranks.[8] (Chen Decl. ¶ 10.) Ultimately, Ms. Harden met with Mr. Kenney and decided to hire him.[9] (Norouzi Decl. ¶ 19.) Ms. Strickland "believe[s] that she was not afforded a fair and equal opportunity to apply for the position . . . because of [her] age, race[,] and sex." (Strickland Decl. ¶ 27.)

Ms. Strickland also argues that she "engaged in a number of protected activities" by "attempting to address health and safety concerns in Career Services, using the

---

[8] Ms. Strickland notes that she outscored Mr. Kenney on two of the scoring sheets, and another applicant also outscored Mr. Kenney on a scoring sheet. (Strickland Decl. ¶ 40.) Even so, these facts do not undermine the undisputed fact that Mr. Kenney outscored Ms. Strickland overall during the application and interview process or that Ms. Strickland scored overall among the lower ranks of the applicants.

[9] In her declaration, Ms. Strickland asserts that (1) Mr. Kenney did not have the qualifications for the job as stated in the job description, and (2) her qualifications for the position were stronger than Mr. Kenney's qualifications. (*See* Strickland Decl. ¶¶ 25 (stating that she learned about Mr. Kenney's qualifications in her conversation with him), 41 (containing a chart comparing Ms. Strickland's qualifications and performance to Mr. Kenney's).) However, Ms. Strickland does not provide any foundation for her knowledge of Mr. Kenney's qualifications—other than hearsay—or for her assessment of his job performance—much of which appears to be based on her personal opinions and conclusions. (*See id.*) Indeed, Seattle Central moves to strike this and other paragraphs from Ms. Strickland's declaration on grounds of hearsay and speculation. (Reply (Dkt. # 39) at 5.) The court grants in part Seattle Central's motion and strikes the portion of Ms. Strickland's declaration addressing Mr. Kenney's qualifications and job performance because it lacks foundation and is based on speculation. Accordingly, the court does not credit this portion of Ms. Strickland's testimony for purposes of resolving this motion. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

grievance process available to her through the [Collective Bargaining Agreement]," and "trying to gain promotion and the related pay to the position that she was doing for the [C]ollege on an interim basis." (Resp. at 17.) She states that she "made numerous complaints about the discriminatory, retaliatory hostile working environment actions of . . . [D]efendants. . . . [and] about numerous safety and security concerns that placed [her] life and others at risk." (*Id.* ¶ 29.) However, she provides few testimonial specifics. (*See generally id.*) She references generalized "harass[ment] and bullying" in connection with obtaining her signature on a job description. (*See id.* ¶ 29, Ex. G.) She also states that she did not receive an evaluation for three years and believes that she was entitled to more frequent evaluations to support her efforts to obtain a promotion. (*Id.* ¶ 49.) She also requested a copy of her personnel file and discovered that it contained "none of [her] credentials"—even those paid for by Seattle Central. (*Id.*) She states that someone "gained access" to her personal information and anonymously sent her a DVD entitled "Men in Grief" through the inner office mail. (*Id.* ¶ 51.) She returned the DVD to the library, but the librarians would not disclose any information about who checked out the DVD. (*Id.*) Finally, she attests that she was "treated differently and unfairly" because the front desk at the Career Center was left unattended while she "was behind closed doors with the student." (*Id.* ¶¶ 53-54.)

Prior to applying for the Career Services Supervisor position, Ms. Strickland began seeing Dr. Michael Kane for what he describes as "family issues, regarding family relationship." (Foster-Brown Decl. (Dkt. # 35-2) ¶ 2, Ex. 1 ("Kane Dep.") at 23:22-24:1.) However, during 2017, Dr. Kane determined that Ms. Strickland needed "

to have an extended period away from her employment.  (Strickland Decl. ¶ 58, Ex. M.)

On February 2, 2018, Dr. Kane authorized "Ms. Strickland to return to work on February

5, 2018, and resume her job-related duties."  (Foster-Brown Decl. ¶ 5, Ex. 4.)

On February 5, 2018, Ms. Strickland sent a letter to Seattle Central resigning her

position.  (*Id.* ¶ 6, Ex. 5.)  She states in her letter that she "enjoyed working in the career

services center for nine years . . . ."  (*Id.*)  However, she attests that she "chose to leave

[her] employment because . . . the work environment had become increasingly more

hostile than before."  (Strickland Decl. ¶ 56.)  She states that she asked for an

investigation into the DVD issue and the apparent compromise of her personal

information but did not get one, was humiliated when she was asked to supervise interns

until a supervisor was selected, and was falsely accused by Mr. Kenney of creating a

"hostile work environment."  (*Id.*)  She did not understand why she was asked to train

Mr. Kenney if he possessed the qualifications for the job.  (*Id.* ¶ 57.)  Ultimately, she

found her work environment "so untenable" that she no longer "want[ed] to stay" in such

a "tense, hostile working environment."  (*Id.* ¶ 57.)

On July 20, 2018, Ms. Strickland filed suit against Seattle Central and Individual

Defendants.  (*See* Compl.)  She alleged claims for (1) race and sex discrimination in

violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and the

Washington Law Against Discrimination ("WLAD"), RCW 49.60, *et seq.*, (2) age

discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29

U.S.C. § 621, *et seq.*, (3) civil right violations against all of the individual defendants

pursuant to 42 U.S.C. § 1981, and (4) retaliation in violation of Title VII and WLAD.

(*See generally id.*)  On November 12, 2019, Seattle Central and Individual Defendants moved for summary judgment on all of Ms. Strickland's claims.  (*See generally* MSJ.)  On December 9, 2019, the court entered a stipulated order dismissing Individual Defendants and Ms. Strickland's 42 U.S.C. § 1981 claims.  (Stip. Order.)  Accordingly, in this order, the court addresses only Ms. Strickland's remaining claims against Seattle Central.

### III.    ANALYSIS

**A.    Summary Judgment Standard**

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" to withstand summary judgment.  *Galen*, 477 F.3d at 658. The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

**B.      Ms. Strickland's Disparate Treatment Claim**

Ms. Strickland asserts that Seattle Central discriminated against her based on her race, sex, and age.  (*See generally* Compl.)  Title VII of the Civil Rights Act makes it illegal for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] . . . sex." 42 U.S.C. § 2000e-2(a)(1).  The ADEA forbids the identical conduct when the discrimination is "because of such individual's age."  29 U.S.C. § 623(a)(1).

"The standard analysis under Title VII is the same as that under ADEA." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000).  The court applies the *McDonnell Douglas* burden shifting analysis for each.  *Testerman v. Somerton Elementary Sch. Dist.*, No. 2:07-CV-0079PHXFJM, 2008 WL 5082164, at *2 (D. Ariz. Nov. 26, 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  The plaintiff has the initial burden to show a *prima facie* case of discrimination, which defendant may then rebut by providing a "legitimate, nondiscriminatory reason" for the disparate treatment.  *Odima v. Westin Tucson Hotel Co.*, 991 F.2d 595, 599 (9th Cir. 1993) (citation omitted).  "Establishing a *prima facie* case under *McDonnell Douglas* creates a presumption that the plaintiff's employer undertook the challenged employment action because of the plaintiff's race" or other protected class.  *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).  If the defendant provides a "legitimate, nondiscriminatory" reason for the action, "the presumption of discrimination 'drops out of the picture,'" and the plaintiff may defeat summary judgment by the

satisfying the usual standard of proof required in civil cases under Rule 56(c). *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143 (2000); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). Despite the intermediate burden of production shifting, the ultimate burden of proving discrimination remains with plaintiff at all times. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

There are two methods by which a disparate treatment plaintiff can meet the standard of proof required by Rule 56(c): (1) the plaintiff may offer evidence, direct or circumstantial, that a discriminatory reason more likely motivated the employer to make the challenged decision; or (2) the plaintiff may offer evidence that the employer's proffered explanation is unworthy of credence or is a actually a pretext for racial discrimination. *Cornwall*, 438 F.3d at 1028. Nevertheless, a disparate treatment plaintiff may not defeat a summary judgment motion merely by denying the credibility of the defendant's proffered reason for the challenged employment action nor by relying solely on the plaintiff's subjective belief that the challenged employment action was unnecessary or unwarranted. *Id.* at 1028 n.6. Further, "a reason cannot be proved to be a 'pretext *for discrimination* unless it is shown *both* that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr.*, 509 U.S. at 515.

As noted above, to defeat summary judgment, Ms. Strickland must first establish a *prima facie* case of discrimination. *Odima*, 991 F.2d at 599. To establish such a case, Ms. Strickland must offer admissible evidence that: (1) she belonged to a class of persons protected by Title VII; (2) that she performed her job satisfactorily; (3) that she suffered an adverse employment action; and (4) that her employer treated her differently

than a similarly-situated employee who does not belong to the same protected class as the plaintiff. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).

//

The court initially focuses on the third element of Ms. Strickland's *prima facie* case—an adverse employment action. An adverse employment action "is one that 'materially affect[s] the compensation, terms, conditions, or privileges of . . . employment.'" *Davis v. Team Elec. Co.*, 520 F.3d 1090, 1089 (9th Cir. 2008) (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1126 (9th Cir. 2000)) (alteration in original). Ms. Strickland has identified two possible "adverse employment actions." First, she was denied promotion to the supervisory role for which she applied. (*See* Compl. ¶¶ 5.14, 5.19-.20; Strickland Decl. ¶ 27 ("I believe that I was not afforded a fair and equal opportunity to apply for the position of Career Services Support Supervisor because of my age, race[,] and sex.").) Second, she asserts that she did not voluntarily resign on February 5, 2018, but rather was constructively discharged.[10] (*See* Strickland

---

[10] Ordinarily, a broad definition of "adverse employment action" would include Ms. Strickland's hostile work environment allegations. *See Henry v. Regents of the Univ. of Cal.*, 644 F. App'x 787, 789 (9th Cir. 2016). However, although neither party provides a systematic analysis of Ms. Strickland's hostile work environment claim (*see generally* MSJ; Resp.; Reply (Dkt. #39)), the court concludes that Ms. Strickland does not provide sufficient evidence to sustain a hostile work environment claim at trial. Excluding the two potential adverse employment actions described above, the various incidents that Ms. Strickland describes—being told that she would not be appointed interim Career Services Supervisor in an open area of the Career Services Center where others could overhear, temporarily performing the duties of that role despite not attaining the "interim" title, the incident involving her signature on a job description, the lack of timely performance reviews and the lack of a list of credentials in her personnel file, the events surrounding her receipt of a DVD in inner office mail, and the failure to provide continual staffing at the department's front desk—are simply not "sufficiently severe or pervasive" to alter the conditions of Ms. Strickland's employment and "create an abusive working environment." *See, e.g., Manatt v. Bank of Am., NA*, 339 F.3d 792, 795-803 (9th Cir. 2003) (affirming dismissal of hostile work environment claim where the plaintiff alleged racially offensive statements, pantomimes, and gestures); *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 643 (9th Cir. 2003) (holding that "no reasonable jury could have found a hostile work environment" despite manifold allegations of racial discrimination, including "that the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos," etc.); *Mangaliman v. Wash. State DOT*, No. CV11-1591 RSM, 2014 WL 1255342, at *10 (W.D. Wash. Mar. 26, 2014) (finding no hostile work

Decl. ¶¶ 56-60; *see also* Resp. at 8 ("In the end the rising hostility and abuse in the working environment forces Ms. Strickland to leave her position, a position she loved, because it was becoming impossible to do her job."), 17 ("[S]he was forced to tender her resignation.").)  As discussed below, the court concludes that (1) Ms. Strickland was not constructively discharged as a matter of law, but rather voluntarily resigned, and (2) Ms. Strickland fails to demonstrate a triable issue of fact that Seattle Central's proffered "legitimate, nondiscriminatory" reason for denying her the promotion to Career Services Supervisor and instead hiring Mr. Kenney was in fact a pretext for discrimination or that discrimination more likely motivated Seattle Central's decision.

      1.  <u>Ms. Strickland Was Not Constructively Discharged as a Matter of Law</u>

      "To demonstrate constructive discharge, a plaintiff must meet a demanding standard."  *Rodarte v. Trident Seafoods Corp.*, No. C13-1028JLR, 2014 WL 4113599, at *4 (W.D. Wash. Aug. 20, 2014).  The federal and Washington standards for constructive discharge are similar.  *Id.*  In Washington, "while resignations are presumed to be voluntary, a plaintiff may overcome that presumption . . . by demonstrating a deliberate act by the employer that made her working conditions so intolerable that a reasonable

---

environment and granting dismissal where the employee was called "dumb Filipino," yelled at by supervisors, "scrutiniz[ed]," and "subject[ed] to extensive performance testing").  Isolated incidents, such as those described by Ms. Strickland, "unless extremely serious" are not severe or pervasive enough to alter the conditions of employment.  *Manatt*, 339 F.3d at 798 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).  Further, Ms. Strickland has not provided evidence—other than her own conclusory allegations—that shows any discriminatory motive based on race, sex, or age behind the isolated incidents she describes.  *See Henry*, 644 F. App'x at 788.  Because Ms. Strickland cannot succeed on her hostile work environment claim, the court does not consider the isolated incidents she describes in support of that claim as "adverse employment actions" for purposes of her disparate treatment claim.  *See id.* at 789.

person would have felt compelled to resign." *Washington v. Boeing*, 19 P.3d 1041, 1049 (Wash. Ct. App. 2000). Likewise, the federal standard requires a plaintiff to demonstrate that there are "triable issues of fact as to whether a reasonable person in his [or her] position would have felt that he [or she] was forced to quit because of intolerable and discriminatory working conditions." *Huskey v. City of San Jose*, 204 F.3d 893, 900 (9th Cir. 2003); *see also Penn. State Police v. Suders*, 542 U.S. 129, 133 (2004) (stating that the plaintiff must "show that the abusive working environment became so intolerable that [the plaintiff's] resignation qualified as a fitting response"). This is an objective standard. *Suders*, 542 U.S. at 146-47. Furthermore, "[a] plaintiff alleging constructive discharge must show some aggravating factors, such as a continuous pattern of discriminatory treatment." *Schindrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1411-12 (9th Cir. 1996) (citing *Sanchez v. City of Santa Ana*, 915 F.2d 424, 431 (9th Cir.1990)).

   Although constructive discharge is usually a factual matter for the jury, a court may decide the issue as a matter of law. *See Huskey*, 204 F.3d at 900. For example, the Ninth Circuit affirmed summary judgment on a constructive discharge claim where the employer replaced the plaintiff with a much younger man as head of the company, forced the plaintiff to move out of his office to a much smaller office, gave a raise to another vice president so that he earned more than the plaintiff, excluded the plaintiff from lunch meetings, and told other employees not to speak to the plaintiff, but did not demote the plaintiff, cut his salary, encourage him to resign, or discipline him. *See Schnidrig v. Columbis Mach, Inc.*, 80 F.3d 1406, 1411-12 (9th Cir. 1996). The Ninth Circuit also held that the plaintiff's allegations were insufficient to sustain a constructive discharge claim

where the employer gave the employee below standard evaluations, ordered her to oversee a casino game that she was incapable of overseeing, and publicly ridiculed her for her inability to oversee the game. *See Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1462-66 (9th Cir. 1994). The Circuit held that the plaintiff failed to establish constructive discharge as a matter of law where the employer changed the plaintiff's employment status from a contract to an at-will employee, reduced the plaintiff's managerial responsibility, decreased the plaintiff's salary by $60,000.00, and changed his bonus structure from fixed to performance-based. *See King v. AC & R Advertising*, 65 F.3d 764, 767-69 (9th Cir. 1995). Finally, the Circuit held as a matter of law that a deputy city attorney was not constructively discharged where the employer withdrew support for the plaintiff's upcoming trial, trivialized the plaintiff's cases, gave the plaintiff less favorable evaluations, informed the plaintiff that it had lost confidence in him, told the plaintiff once that he should leave the office, assigned the plaintiff only minor cases, and criticized the plaintiff's work, decisions, and personality. *See Huskey*, 204 F.3d at 897-98, 901-02.

Ms. Strickland asserts that Seattle Central failed to promote her to the supervisory position to which she applied and instead promoted a younger, white, male applicant (*see* Strickland Decl. ¶¶ 22-25, 27-45); informed her that she would not be appointed to the interim supervisory position in an open area of the department where others could and did overhear the remark (*see id.* ¶¶ 18-20, 26); required her to temporarily perform the duties of the interim supervisory position despite not appointing her to that position (*see id.* ¶¶ 21, 46-48); "harassed and bullied" her in connection with her signature on a job

description (*see id.* ¶ 29, Ex. G); failed to timely provide job performance evaluations to support her ability to be promoted and to include all of her credentials in her personnel file (*see id.* ¶ 49); failed to provide any information concerning her receipt of a DVD entitled "Men in Grief" anonymously through the inner office mail (*see id.* ¶¶ 51, 52-53); and "treated her differently and unfairly" and ignored safety concerns because the front desk of the department was left unattended while she "was behind closed doors with a student" (*see id.* ¶ 52). However, Ms. Strickland does not allege that Seattle Central demoted her, cut her salary, encouraged her to resign, or disciplined her. (*See generally id.*); *see also Schnidrig*, 80 F.3d at 1412. Viewing Ms. Strickland's evidence in the light most favorable to her, and comparing the conditions of her employment to those which the Ninth Circuit has found as a matter of law do not amount to constructive discharge, the court cannot conclude that Ms. Strickland's has raised a triable issue of fact that her working conditions were so intolerable and discriminatory that a reasonable person would feel forced to resign.[11] Accordingly, the court grants Seattle Central's motion for summary judgment on any portion of Ms. Strickland's disparate treatment claim that is based on allegations of constructive discharge.

//

//

---

[11] Further, the standard for constructive discharge is higher than the standard for demonstrating a hostile work environment. *Tatum v. Davita Healthcare Partners, Inc.*, ___F. App'x ___, No. 18-15762, 2019 WL 5598087, at *1 (9th Cir. Oct. 30, 2019) (citing *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000)). Because Ms. Strickland fails to show she was subjected to a hostile work environment, *see supra* n. 10, she cannot meet the higher standard of constructive discharge—conditions so intolerable that the reasonable person would leave the job. *Id.*

//

2. <u>Ms. Strickland Fails to Raise a Triable Issue of Fact that Seattle Central's Reasons for Denying Her the Promotion were a Pretext for Discrimination</u>

The court now turns to Ms. Strickland's second possible "adverse employment action"—Seattle Central's failure to promote her to the supervisory position in her department. (*See* Compl. ¶¶ 5.14, 5.19-.20; Strickland Decl. ¶ 27.) For purposes of its analysis in this section, the court assumes, without deciding, that Ms. Strickland can establish a *prima facie* case of discrimination concerning this alleged adverse employment action. Even so, Seattle Central is still entitled to summary judgment because Ms. Strickland fails to raise a triable issue of fact that Seattle Central's proffered "legitimate, nondiscriminatory" reason for denying her the promotion and instead hiring Mr. Kenney was in fact a pretext for discrimination or that discrimination more likely motivated Seattle Central's decision. *See Cornwell*, 439 F.3d at 1028.

Seattle Central offers the interview process it conducted as a legitimate, non-discriminatory reason for its selection of Mr. Kenney, instead of Ms. Strickland, for the Career Services Supervisor position. (MSJ at 11-12.) As a result, the burden of production falls on Ms. Strickland to show that the interview process was a pretext for discrimination, "either directly by persuading the court that a discriminatory reason more likely motived [Seattle Central] or indirectly by showing that [Seattle Central's] proffered explanation is unworthy of credence." *Hernandez v. Spacelabs, Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (citation omitted). The ultimate issue is whether Ms. Strickland has raised a genuine issue of material fact from which a reasonable jury could

infer that she was discriminated against based on her race, sex, or age. *See Odima*, 991 F.2d at 599.

To meet her burden, Ms. Strickland argues that there were procedural irregularities in the hiring process because the chair of the hiring committee, Ms. Norouzi, had a prior working relationship with Mr. Kenney, and Ms. Strickland asserts that Ms. Norouzi's prior associatoin with Mr. Kenney improperly influenced the hiring committee in its selection. (Resp. at 15.) Yet, Ms. Norouzi and other members of the hiring committee testified that Ms. Norouzi disclosed her prior working relationship with Mr. Kenney to the committee (Norouzi Decl. ¶ 7; Mostad Decl. ¶ 8), took no active role in the committee's interview of Mr. Kenney (Norouzi Decl. ¶ 16), and did not seek to influence the committee in favor or disfavor of Mr. Kenney (Mostad Decl. ¶ 8). Ms. Strickland cites no evidence in support of her contention that Ms. Norouzi's testimony that she did not actively participate in Mr. Kenney's interview was false. (*See* Strickland Decl. ¶ 11); *see supra* n.7. Although Ms. Strickland notes that Ms. Norouzi actively participated in interviewing and evaluating other candidates (*see* Strickland Decl. ¶ 11), this does not undermine Ms. Norouzi's testimony that she was "silent for [Mr. Kenney's] interview" and did not seek to influence the panel in Mr. Kenney's favor (*see* Norouzi Decl. ¶¶ 7, 16; Mostad Decl. ¶ 8). A disparate treatment plaintiff, such as Ms. Strickland, may not defeat summary judgment simply by denying the credibility of the defendant's proffered reason or by relying solely on her subjective beliefs. *See Cornwall*, 439 F.3d at 1028 n.6. In any event, "procedural irregularities" in a committee-based selection process are "not . . . conclusive of pretext even if accepted as true." *See Autry v. Fort Bend Indep. Sch.*

*Dist.*, 704 F.3d 344, 348 (5th Cir. 2013) (citing *E.E.O.C v. Texas Instruments, Inc.*, 100 F.3d 1173, 1182 (5th Cir. 1996)).

Even if the interview process was flawed in the manner Ms. Strickland asserts, this fact does not render Seattle Central's action pretextual under either Title VI or the ADEA. Ms. Strickland cannot prove that the interview process was a pretext for discrimination unless she shows both that Seattle Central's proffered reason was false and the real reason behind its decision was discrimination. *See St. Mary's Honor Ctr.*, 509 U.S. at 515. She can show neither here. In judging whether an employer's proffered justification for an adverse employment action is "false," it is not important whether the justification is objectively false. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002). The case law is clear that Seattle Central only has to "honestly believe[] its reasons for its actions." *Id.* Seattle Central's process may have been flawed or produced the wrong decision for any number of reasons, and this would not mean that Seattle Central's decision was pretextual under Title VII or the ADEA. So long as Seattle Central "honestly believed" its reasons for hiring Mr. Kenney and not promoting Ms. Strickland, its reasons for doing so could, in fact, be "foolish or trivial or even baseless" and still not be pretextual. *See id.* Because Ms. Strickland "present[s] no evidence that [Seattle Central] did not honestly believe its proffered reasons" for its hiring decision, she fails to raise a genuine material factual dispute concerning pretext here. *See id.*; *see also George v. Youngstown State Univ.*, No. 4:17CV2322, 2019 WL 118601, at *10 (N.D. Ohio Jan. 7, 2019) (reasoning that the fact that the plaintiff "was qualified for the position . . . does nothing to show that the search committee's reason for

not hiring him was pretextual" because "[e]ven if [the plaintiff] was objectively qualified for the position, the search committee's honest belief that he was not qualified for the position would defeat [the plaintiff's] attack on the legitimacy of the proffered reason")

Even if the hiring committee was influenced by Mr. Norouzi's prior working relationship with Mr. Kenney, this fact also does not demonstrate that Seattle Central was engaging in discrimination based on race, sex, or age. It simply means that the panel was influenced by the prior good experience that one of its panelists had working with one of the other the candidates for the position. This fact, even if true, does not demonstrate that Seattle Central engaged in any discrimination based on race, sex, or age. *See Amini v. Oberlin College*, 440 F.3d 350, 360 (6th Cir. 2006) (stating that hiring decisions based on "personal . . . connections to the college" "are not illegal"); *Goostree v. State of Tenn.*, 796 F.2d 854, 862 (6th Cir. 1986) (stressing "the difference between a hiring process that proceeds based on legally impermissible distinctions between candidates and a 'patronage system that relies on family, friends, and political allies'") (internal citation omitted).

Finally, Ms. Strickland argues that Mr. Kenney did not meet the minimum qualifications for the position and that her qualifications far outweighed his. (*See* Resp. at 15; *see also* Strickland Decl. ¶¶ 25, 41.) As noted above, she cites no admissible evidence to support Mr. Kenney's lack of qualifications. *See supra* n.6. That Ms. Strickland would rate herself higher than Mr. Kenney or subjectively believes she is better qualified than Mr. Kenney is not sufficient to cast doubt on Seattle Central's proffered reason for its decision. *See Martin v Gen. Elec. Co.*, 891 F. Supp. 1052, 1058

1    (E.D. Pa. 1995) ("That [the plaintiff] would rate himself higher than [his supervisor]

2    did . . . is not sufficient to cast doubt on [the employer's] reason.  This court does not sit

3    as a super human resources office, judging whether plaintiff indeed possessed better

4    leadership, communications, or analytical skills than other on the same matrix.").

5    Further, even if Ms. Strickland could produce evidence that Mr. Kenney was less

6    qualified for the position than she was, this fact alone would not raise a triable issue of

7    material fact for the jury.  Hiring Mr. Kenney and deciding not to promote Ms. Strickland

8    were decisions within Seattle Central's discretion.  *See KcKennon v. Nashville Banner*

9    *Publ. Co.*, 513 U.S. 352, 361 (1995) ("The ADEA, like Title VII, is not a general

10   regulation of the workplace but a law which prohibits discrimination.  The statute does

11   not constrain employers from exercising significant other prerogatives and discretions in

12   the course of hiring, promoting, and discharging of their employees.") (citing *Price*

13   *Waterhouse v. Hopkins*, 490 U.S. 228, 239 (1989) ("Title VII eliminates certain bases for

14   distinguishing among employees while otherwise preserving employers' freedom of

15   choice.")).  Because Ms. Strickland has not shown sufficient evidence from which a

16   reasonable jury could conclude that Seattle Central's decision to hire Mr. Kenney for the

17   supervisory position and not to promote her was a pretext for discrimination, the court

18   GRANTS Seattle Central's motion for summary judgment as to Ms. Strickland's Title

19   VII and ADEA discrimination claims.

20   **C.    Ms. Strickland's Retaliation Claim**

21         Ms. Strickland also claims that she was the victim of retaliation by Seattle Central.

22   (*See* Resp. at 16-17.)  Retaliation claims under Title VII and the ADEA are treated alike

and the court decides them using the same *McDonnell Douglas* burden shifting

framework. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004);

*Hashimoto v. Dalton*, 118 F.3d 671, 675 n.1 (9th Cir. 1997). To establish a prima facie

case under federal law, Ms. Strickland must show: (1) she was engaged in a protected

activity; (2) she suffered an adverse employment action; and (3) a causal link between the

protected activity and the employer's action. *Yartzoff v. Thomas*, 809 F.2d 1371, 1375

(9th Cir. 1987). The third element requires that the plaintiff show but-for causation.

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 361 (2013). Washington law does

not require but-for causation, but the plaintiff must show that the protected activity was a

substantial factor in the employer's adverse employment decision. *See Dawud v. Boeing

Co.*, No. C17-1254-JCC, 2018 WL 4735703, at *5 (W.D. Wash. Oct. 2, 2018) (citing

*Francom v. Costco Wholesale Corp.*, 991 P.2d 1182, 1191 (Wash. Ct. App. 2000)).

In support of her retaliation claim, Ms. Strickland argues that she was "engaged in

a number of protected activities, primarily through attempting to address health and

safety concerns in Career Services, using the grievance process available to her through

the [Collective Bargaining Agreement], and, most importantly, trying to gain promotion

and the related pay to the position that she was doing for the college on an interim basis."

(Resp. at 17.)

As discussed above, Ms. Strickland may not assert constructive discharge to

satisfy the second element of her retaliation claim—that she suffered an adverse

employment action. The court has already determined that Ms. Strickland voluntarily

resigned and was not constructively discharged as a matter of law. *See supra* § III.B1.

1    Thus, the only potential adverse employment action Ms. Strickland may rely upon to

2    satisfy the second element of her retaliation claims is Seattle Central's failure to promote

3    her to the Career Services Supervisor position.

4           Ms. Strickland provides no evidence that Seattle Central's reason for not

5    promoting her is a pretext for retaliation.  Her subjective belief that she is more qualified

6    than Mr. Kenney for the position does not raise a triable issue of fact on her retaliation

7    claim.  *See Testerman v. Somerton Elem. Sch. Dist.*, No. 2:07-cv-0079-FJM, 2008 WL

8    5082164, at *4 (D. Ariz. Nov. 26, 2008) (citing Coleman, 232 F.3d at 1285 ("Plaintiff's]

9    'subjective personal judgments of her competence alone do not raise a genuine issue of

10   material fact.") (citations omitted).

11          Further, Ms. Strickland fails to demonstrate causation—whether under the federal

12   but-for standard or Washington's "substantial factor" standard.  *See Nassar*, 570 U.S. at

13   361; *Dawud*, 2018 WL 4735703, at *5.  There is no evidence that anyone on the hiring

14   committee was aware of Ms. Strickland's engagement in the protected activities that she

15   asserts.  The causation element may be satisfied through circumstantial evidence,

16   including an "employer's knowledge that the plaintiff engaged in protected activities and

17   the proximity in time between the protected action and the allegedly retaliatory

18   employment decision."  *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).[12]

19   _____

20          [12] The Ninth Circuit has stated "in some cases, causation can be inferred from timing
     alone" if the alleged retaliation follows "on the heels of protected activity."  *Villiarimo*, 281 F.3d
21   at 1065.  However, "cases that have found a period of months between protected activity and
     alleged retaliation sufficient for a prima facie case have, at a minimum, relied on an additional
     showing of knowledge of, or some kind of involvement in, the protected activity on the part of
22   the decision-maker."  *De La Rosa v. Hanger Prosthetics & Orthodics, Inc.*, No.

However, the decision-maker's lack of knowledge of a plaintiff's protected activity "breaks the requisite causal link." *Cohen*, 686 F.2d at 797; *see also Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003), *opinion amended on denial of reh'g*, No. 00-35999, 2003 WL 21027351 (9th Cir. May 8, 2003) (stating that "the plaintiff must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity."). Here, there is no evidence that anyone on the hiring committee knew that Ms. Strickland had complained about safety issues in the Career Services Center, initiated any grievance process through the union or Collective Bargaining Agreement, previously sought to be appointed as the Career Services interim supervisor, or sought back pay for performing a supervisory role in her Career Services position. The same is true of the final hiring authority, Ms. Harden; there is no evidence that she had any knowledge of Ms.

---

CV-11-00306-PHX-DGCO, 2012 WL 3819459, at *9 (D. Ariz. Sept. 4, 2012) (citing *Miller v. Fairchild Indus. Inc.*, 797 F.2d 727, 731-32 (9th Cir. 1986) (finding evidence that management personnel responsible for the layoffs had also participated in EEOC negotiations and knew of the plaintiffs' protected activity less than two months earlier was "sufficiently probative . . . to establish a prima facie case"); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987) (inferring causation where the adverse employment actions took place less than three months after Yartzoff's complaint where his supervisors were aware of his Title VII charges and his participation in administrative investigations); *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 869-70 (9th Cir. 1996) (finding a causal link where the alleged retaliation followed within months of the protected activity where the supervisor told the employee he knew of her complaint and that it "would not be in her best interests" for her to file a discrimination charge)). Conversely, the Ninth Circuit has stated that lack of knowledge of a plaintiff's protected activity on the part of the decision-maker "breaks the requisite causal link." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 797 (9th Cir. 1982). Further, in 2013, the Supreme Court stated that "Title VII retaliation claims . . . require[ ] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360. This court agrees that "it takes more than allegations of temporal proximity to demonstrate but-for causation in a Title VII retaliation claim post-*Nassar*." *Green v. City of Phoenix*, No. CV-15-02570-PHX-DJH, 2019 WL 4016484, at *13 (D. Ariz. Aug. 26, 2019).

Strickland's alleged protected activities. Because a decision-maker's lack of knowledge about protected activity "breaks the requisite causal link," *Cohen*, 686 F.2d at 797, the court GRANTS summary judgment to Seattle Central on Ms. Strickland's retaliation claim.

## IV.    CONCLUSION

Based on the foregoing analysis, the court GRANTS Seattle Central's motion for summary judgment (Dkt. # 35) and enters summary judgment in its favor on all of Ms. Strickland's remaining claims.

Dated this 31st day of December, 2019.

JAMES L. ROBART
United States District Judge